IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JAKE GUARINO, | § |
| Plaintiff, | § |
| vs. | §  CAUSE NO. 1:20-cv-00670-RP |
| VISUAL EDGE, INC., | § |
| Defendant. | § |

# PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Jake Guarino ("Plaintiff" or "Guarino"), by and through his undersigned counsel, brings this action against Defendant Visual Edge, Inc. ("Defendant" or "VEI") as follows:

## I.   PARTIES

1. Plaintiff Guarino is an individual who is a citizen of the state of Texas.

2. Defendant VEI is a Delaware corporation with its principal place of business in the North Canton, Ohio. VEI is authorized to and engages in business in the state of Texas. VEI can be served through its registered agent, Incorporating Services, Ltd., 3610-2 N. Josey, Suite 223, Carrollton, TX 75007-1603.

## II.   JURISDICTION AND VENUE

3. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states of the United States and the amount in controversy exceeds $75,000 excluding interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

EXHIBIT 1

### III.     FACTUAL BACKGROUND

*A.*     *Guarino's Compensation Plan*

5.     In 2008, Guarino was hired as Vice President of Managed Print Services of Zeno Digital Solutions, LLC d/b/a Zeno Imaging ("Zeno").[1]  Guarino brought many valuable contractual relationships (the "Legacy Contracts") to Zeno, and Zeno agreed to compensate him with a salary plus bonuses and commissions on both the Legacy Contracts and new business. Guarino was very successful in his roles at Zeno, resulting in his eventual promotion to Executive Vice President in 2014.

6.     Effective January 1, 2015, Zeno officially adopted a new pay structure for Guarino, which was intended to more closely tie his compensation to Zeno's overall success.  More specifically, Guarino's bonuses would be tied to two key performance indicators: revenue achieved and earnings before depreciation and amortization (EBDA).  Guarino's compensation plan as Executive Vice President was set forth in a letter agreement, dated January 13, 2015.  Under the terms of this new agreement (the "Compensation Plan"), Zeno agreed to provide Guarino a base salary of a specified amount, as well as pay him the following:

- 10% of the gross profit of all deals resulting from his personal sales (to be paid at the payroll following the funding of each deal) (the "Commissions");

- A bonus of 0.4% of Zeno's total monthly revenue (the "Revenue Bonus") as reported on the company's financials as prepared according to Generally Accepted Accounting Principles ("GAAP"); and

- A bonus of 4% of Zeno's quarterly EBDA (the "EBDA Bonus") as reported on the company's financials as prepared according to GAAP.

---

[1]     Zeno is in the business of providing and servicing office equipment (such as printers, copiers, and the like) and related technology.

The Revenue Bonus and the EBDA Bonus are referred to hereafter as the "Bonuses." Guarino's Compensation Plan also includes a specific agreement that he would be reimbursed for business expenses.

### B.  *Guarino is hired by VEI with the same Compensation Plan.*

7.  In 2017 and 2018, Zeno began negotiations to sell its assets in two markets (Houston and Austin) to VEI. Zeno and VEI eventually entered into an Asset Purchase Agreement (the "APA") on November 14, 2018 and effective as of October 31, 2018, which included the purchase of the assumed name Zeno Imaging. (VEI and Zeno also entered into an operating agreement by which VEI operated the Dallas assets retained by Zeno.) As part of the APA, VEI agreed to hire Guarino and assume his Compensation Plan, and it also agreed to grant Guarino certain stock options in its parent, Visual Edge Technology, Inc. ("VET"), a California corporation.

8.  VEI hired Guarino as President of the new Zeno Imaging division of VEI, effective as of October 31, 2018, and it agreed to pay Guarino according to the terms of his Compensation Plan. (Although VEI hired Guarino in conjunction with the APA, VEI administered its employment contracts and obligations through VET; therefore, Plaintiff refers to VEI and VET interchangeably for allegations related to Guarino's employment and compensation.) For approximately six months, VEI paid Guarino the salary, Bonuses and Commissions, required by the Compensation Plan.[2] As a VEI employee, Guarino was also provided other standard benefits provided to all VEI executives, including paid time off ("PTO"), insurance, a standard annual

---

[2]  As Guarino's responsibilities as President of Zeno Imaging for VEI included not only the VEI-owned assets but also the VEI-operated Zeno Dallas assets, his bonus payments were based on the revenues and profits generated by VEI and the Dallas-based Zeno assets managed by VEI.

budgeted performance-based President's Award (the "President's Award") based on individual sales criteria set forth in the 2019 Zeno Imaging sales compensation plan, and the like.[3]

C.  *VEI fails to pay Guarino all of his compensation, but leads him to believe this is due to accounting issues.*

9.  In April 2019, Guarino did not receive the unpaid Bonuses he was due under the Compensation Plan.  When he inquired about them, he was told that they were being withheld at the instruction of Brian Frank ("Frank"), VET's Chief Operating Officer.  Guarino and Frank had several discussions about the unpaid Bonuses.  At no time during these discussions did Frank tell Guarino that VEI was changing his Compensation Plan.  Instead, Frank and then other VET employees, including VET Vice President of Human Resources Melissa Morrison, suggested that the Bonuses were not being paid because the calculations of such Bonuses were being finalized.  VET also repeatedly asked Guarino for copies of his Compensation Plan, which it already had.  At one point, Michael Mills ("Mills"), VET's Chief Financial Officer, told Guarino that the payment of the Bonuses was waiting for approval by Frank, and Frank told Guarino that the payment had to be approved by Mills.  VEI made partial Bonus payments to Guarino in April and June of 2019, and another partial payment in early December of 2019.  Guarino kept working for VEI with the understanding and expectation that the remaining unpaid balance of the Bonuses (and ongoing bonuses which continued to accrue) would eventually be paid, and he diligently continued to press for such payment in what appeared to be a bureaucratic delay.

10.  Guarino continued to receive his base salary and Commissions as set forth under the Compensation Plan through March 2020—with one notable exception:  a Commission due to Guarino for a personal sale with a gross profit of $574,000 (the "Unpaid Commission").  Guarino

---

[3]  As it promised to do in the APA, VEI also granted Guarino 100,000 stock options in VET with a vesting commencement date of February 21, 2019.

4

repeatedly asked to be paid the Unpaid Commission, and various VET agents told him that it was delayed because of calculation and accounting issues. Near the end of 2019, VET told Guarino that it has determined he was not entitled to the Unpaid Commission because the $574,000 client payment (which was earned in exchange for a buy-out of a contract procured by Guarino), which was 100% profit to the company, was not subject to commissions. Guarino strongly disagreed with this interpretation. Again, neither VET nor VEI ever told Guarino that his Compensation Plan was changing at any time, and Guarino continued to work for VEI with the understanding that he would be paid according to the Compensation Plan.

11. Beginning in early 2020, Guarino also sought to be reimbursed for his standard and reasonable business expenses, as well as to be paid for the unpaid Bonuses, the Unpaid Commission, additional Bonuses he was owed under his Compensation Plan, and his vested 2019 President's Award. VET and VEI again played lip service to paying Guarino most or all of these items, but continued to drag its feet in funding.

D.   *Guarino's employment with VEI was eventually terminated on June 15, 2020.*

12. Due to the Covid-19 pandemic, VET temporarily furloughed twenty-nine employees in its Southwest Region on March 20, 2020, including Guarino. In its March 20, 2020 letter to Guarino (the "March Letter"), VEI informed Guarino that, because the layoff was temporary, he would not be paid his accrued, unused PTO. It further stated "If your status should change in the future to that of a terminated employee, it will be paid at that time in accordance with company policies." At the time of his temporary layoff, Guarino's accrued, unused PTO was 119.95 hours. VEI also continued to provide benefits to Guarino and the other temporarily laid off employees. Consequently, the result of the March Letter was that Guarino was temporarily laid off without pay, but with ongoing benefits.

13. During his temporary layoff, Guarino continued his efforts to induce VEI to honor its contractual obligations, including sending a formal demand letter to VET on March 30, 2020. On or about June 22, 2020, Guarino received a letter from VET dated June 15, 2020 informing him that his layoff was now permanent. That letter's attempt to backdate Guarino's termination to March 20, 2020 is legally deficient and inconsistent with the terms of the March Letter.

14. On information and belief, payment on two more of Guarino's personal sales were received by VET during the period from March 20, 2020 to the date of his termination, entitling him to additional Commissions. Also, VET has not paid Guarino his accrued and unused PTO.

### IV. CONDITIONS PRECEDENT

15. All conditions precedent have been performed or have occurred.

### V. COUNT ONE: BREACH OF CONTRACT

16. Guarino has performed his obligations under his employment agreement with VEI, but VEI is in material breach of its obligations thereunder. As described in more detail above, VEI has failed to pay Guarino (1) Bonuses owed to him in an amount estimated over $200,000, (2) Commissions owed to him in an amount estimated to be over $60,000, (3) for expense reimbursements of approximately $6,000, (4) the President's Award owed to him in the amount of $5,000, and (5) his accrued, unused PTO in the amount of $13,101. As a direct and proximate result of VEI's conduct, Plaintiff suffered injuries and damages in the amounts VEI has improperly failed and refused to pay him.

### VI. ATTORNEYS' FEES AND COSTS

17. As a result of VEI's breach, Plaintiff retained an attorney and seeks reimbursement for his reasonable fees and costs as authorized by Section 38.001 of the Texas Civil Practice and Remedies Code.

## VII.    REQUEST FOR RELIEF

After a trial on the foregoing, Plaintiff respectfully requests that the Court enter judgment awarding the following to him from Defendant Visual Edge, Inc:

1. For damages in an amount to be proven at trial;

2. For pre- and post-judgment interest;

3. For reasonable attorneys' fees and costs of suit; and

4. For such other and further relief, in law or equity, to which Plaintiff may have shown himself to be justly entitled.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

Respectfully submitted,

FRITZ, BYRNE, HEAD & GILSTRAP, PLLC
221 West 6th Street, Suite 960
Austin, Texas  78701
Telephone:  (512) 476-2020
Facsimile:  (512) 477-5267

BY:    /s/ Daniel H. Byrne
Daniel H. Byrne
Texas State Bar No. 03565600
dbyrne@fbhg.law
Christine E. Burgess
Texas State Bar No. 00793428
cburgess@fbhg.law

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 23, 2020, the above and foregoing was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service in the above-referenced case, are being served with a copy of the above- document via the Court's CM/ECF System.

/s/ Daniel H. Byrne
Daniel H. Byrne

7