IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAKE GUARINO, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action No.: 1:20-CV-00670RP |
| | § | |
| VISUAL EDGE, INC., | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**DEFENDANT'S ORIGINAL COUNTERCLAIMS**

Defendant/Counter-Plaintiff Visual Edge, Inc. ("Visual Edge") files its Original Counterclaims and as Counter-Plaintiff complains of Plaintiff/Counter-Defendant Jake Guarino ("Plaintiff" or "Guarino"), and for its causes of action, would respectfully show the Court the following:

**I.**
**PARTIES**

1. Plaintiff/Counter-Defendant Guarino is an individual who is a citizen of the State of Texas. Guarino has already made his appearance by way of being the Plaintiff in this action and service is hereby made through his attorneys of record in this action, Daniel H. Byrne and Christine E. Burgess, with the law offices of Fritz, Byrne, Head & Gilstrap, PLLC, 221 West 6th Street, Suite 960, Austin, TX 78701 by filing and service via the CM/ECF filing system.

2. Defendant/Counter-Plaintiff Visual Edge, Inc. is a Delaware corporation with its principal place of business in the State of Ohio. Visual Edge engages in business in the State of Texas under the assumed names Zeno Digital Solutions, Zeno Imaging, and Zeno Business Systems.

1

## II.
### JURISDICTION AND VENUE

3. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Guarino and Visual Edge are citizens of different states of the Unites States and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims and counterclaims occurred in this judicial district.

## III.
### BACKGROUND FACTS

5. On information and belief, in 2008, Guarino was hired as the Vice President of Managed Print Services of Zeno Digital Solutions, LLC d/b/a Zeno Imaging ("Zeno"). At that time, Zeno was principally owned by the founder of the company Thomas Frederick ("Frederick"). On information and belief, Frederick was largely an absentee owner of the business and turned over operational authority and responsibility to Guarino. In 2014, Guarino was made an Executive Vice President of Zeno.

6. On information and belief, effective on or about January 1, 2015, Zeno adopted a new pay structure for Guarino which was tied to Zeno's financial success. Specifically, Guarino's bonus structure was tied to two key performance indicators: revenue achieved and earnings before depreciation and amortization ("EBDA"). Guarino's compensation plan was set forth in a letter agreement dated January 13, 2015 (the "Compensation Agreement") which, on information and belief, Guarino himself substantially authored. Under the terms of the Compensation Agreement, Zeno agreed to provide Guarino a base salary, together with the following:

- 10% of the gross profit of each deal resulting from Guarino's personal sales to be paid on the payroll following funding of a deal (the "Commissions");

- a bonus of 0.4% of Zeno's total monthly revenue (the "Revenue Bonus") as reported on the Company's financials as prepared according to Generally Accepted Accounting Principles ("GAAP"); and

- a bonus of 4% of Zeno's quarterly EBDA (the "EBDA Bonus") as reported on the Company's financials as prepared according to GAAP.

The Revenue Bonus and EBDA Bonus are referred to hereafter collectively as the "Bonuses."

7. Effective as of October 31, 2018, Zeno and Visual Edge entered into an Asset Purchase Agreement whereby Visual Edge purchased Zeno's assets in the Houston and Austin markets and which included the purchase of the assumed name Zeno Digital Solutions and Zeno Imaging. Excluded from the purchase were all assets used exclusively in Zeno's Dallas, Texas location (the "Dallas Business") and Zeno's professional services business (the "Professional Services Business").

8. As part of the Asset Purchase Agreement, Visual Edge hired Guarino, together with then-Zeno Vice Presidents Casey Vaughan ("Vaughan") and Scott Copeland ("Copeland"), and retained Guarino's existing compensation plan. Visual Edge initially hired Guarino as President of the new Zeno division. Subsequently, in the fall of 2019, Visual Edge regionalized various markets and named Guarino as the General Manager of the Southwest Region. As President and General Manager, Guarino had the operational authority and responsibility to oversee and manage the new Zeno division in the Houston and Austin markets, including accurate financial reporting relating to the Zeno division.

9. As the President of Zeno, and subsequently the General Manager of Visual Edge's Southwest Region, Guarino owed Visual Edge fiduciary duties to manage and operate the business in a trustworthy and honest manner. As such, Guarino was bound to exercise the utmost honesty, good faith and full disclosure on all transactions related to the business and its finances. As reflected below, the trust and confidence placed in Guarino was violated by Guarino who

repeatedly breached his fiduciary duties and engaged in acts of self-interest by deliberately not following required protocols for the reporting and recording of sales transactions, falsifying and misrepresenting (and/or requiring others who reported to him to falsify) the financial results of Zeno in order to artificially increase his Bonuses and Commissions and his anticipated earn out from the sale of the company, together with other acts of misconduct during the time he served in a fiduciary capacity for Visual Edge.

10. After the purchase of Zeno, it took several months for the Zeno accounting system to become fully integrated with Visual Edge's accounting system. After these accounting systems were more fully integrated in approximately April 2019, some troubling patterns began to emerge as to how Zeno and Guarino were reporting and recording "deals" or sales transactions with customers. There were repeated instances of Zeno, at Guarino's express direction, recording sales transactions on the Zeno financial system without required protocols being followed which resulted in a high level of uncollectable accounts receivable, bad debt, and ultimately less revenue than what was anticipated at the time of the Zeno asset purchase. Examples include, but are not limited to:

- shipping equipment and posting revenue for sales transactions with no approved lease or credit approval for the customer;
- not properly documenting Delivery and Acceptance ("D&A") of equipment sales and leases;
- inadequate documentation for large customer accounts;
- providing manual credit memos to customers without entering the credit into the financial system;
- billing maintenance contracts after the contracts had expired or had been cancelled by the

4

74346696.1

customer resulting in uncollectable account receivables ("A/R") and the accumulation of bad debt;

- booking and posting revenue on sales before the work had been completed; and
- moving A/R from the Zeno balance sheet off of the A/R trial balance to a miscellaneous account so that unpaid items would not appear to be aging, uncollectable or as a reserve calculation.

Guarino engaged in false and deliberate manipulation of Zeno's financial performance in order to increase Bonuses and Commissions he claims are owed to him under the Compensation Agreement. The failure by Guarino to follow GAAP, as he was required to do under the terms of his Compensation Agreement to be eligible to receive Bonuses and Commission, as well as the failure to comply with required protocols for recording and reporting sales transactions, was done by Guarino in an effort to falsely and artificially increase his personal sales, together with Zeno's reported monthly revenue and quarterly earnings, so as to increase the Bonuses and Commissions to be paid to him under the terms of the Compensation Agreement.

11. As a result of Guarino's fraudulent and deceptive conduct, Visual Edge was required to spend considerable time, money and resources to go back and perform an accounting and adjustment of Zeno's true financial performance during the time Guarino was President and General Manager. The result of that accounting and adjusted financial statements demonstrates that if Guarino is owed any additional compensation under the terms of the Compensation Agreement, it is far less than what he claims to be owed in this lawsuit.

12. Guarino had an additional personal financial incentive to falsify the financial performance and results of Zeno. The Asset Purchase Agreement contained an earn-out and contingent payment provision whereby Visual Edge was contractually obligated to pay to Zeno

5

74346696.1

and Frederick (the "Sellers") the following additional amounts contingent upon the financial performance of the purchased Zeno assets after the sale:

- up to Five Million, Seven Hundred and Sixty Thousand Dollars ($5,760,000.00) for a 2018 contingent payment;

- up to Four Million, Two Hundred Thousand Dollars ($4,200,000) for an Earn-out #1 contingent payment; and

- up to One Million, Four Hundred and Forty Thousand Dollars ($1,440,000) for an Earn-out #2 contingent payment.

13. Pursuant to the Asset Purchase Agreement, Guarino and two other Zeno executives were entitled to be paid 25% in the aggregate to the extent any earn out payments were required to be made and provided that he was still employed by Visual Edge at the time such payments were made. Based on information and belief, by virtue of an agreement with the Sellers, Guarino has and retains a financial interest in any earn out payment made to the Sellers of up to $850,000.00.

14. During the time he was employed with Visual Edge and in an effort to maximize his anticipated earn out payment, Guarino falsified (and/or required others who reported to him to falsify) Zeno's financial performance and results to make it appear as if Zeno was doing better financially than what it truly was. Among other things, as part of this scheme, Guarino required others in the organization who reported to him to defer earned bonus and commission payments until a later time, after the earn-out had been paid.

15. As a result of Guarino's fraudulent manipulation of Zeno's financial performance and financial statements during the time he was placed in charge of operating the business, and prior to understanding the full scope of Guarino's fraudulent activities, in January 2020, Visual

6

74346696.1

Edge and the Sellers entered into an Amendment No. 1 to the Asset Purchase Agreement and Release (the "Amendment") whereby the parties agreed to reduce the total maximum aggregate purchase price and provide for a final calculation of the 2018 Contingent Payment and Earn-out #1 in order to restructure the purchase price contingencies and accelerate the cash payments to the Sellers.  In connection with the Amendment, Visual Edge Technology, Inc., the parent company of Visual Edge, was required to enter into promissory notes in the total amount of $3,600,000.00 to be paid to the Sellers.  Additionally, in connection with the Amendment, Visual Edge was required to waive and release any claims it may have had against the Sellers related to the original Asset Purchase Agreement.

16. Guarino's fraudulent activity described above resulted in Visual Edge agreeing to a higher purchase price and better terms to the Sellers, both at the time of the acquisition but also in connection with the Amendment.  Visual Edge would not have agreed to the Amendment with the revised purchase price, promissory notes and release of claims if Guarino had not engaged in the fraudulent activities and had not breached his fiduciary duties in connection with Zeno's financial performance and results.  As a result, Visual Edge seeks damages of no less than $3,342,000.00.

17. As set forth above, when Visual Edge purchased Zeno, it did not purchase the Professional Services Business of Zeno.  Unbeknownst to Visual Edge, Zeno's prior owner Frederick sold this part of the business to Guarino, Vaughan and Copeland, which was then spun off into a new entity named Innovative Orange, LLC ("Innovative Orange").  According to the Texas Comptroller's website, the original members and directors of Innovative Orange were Guarino, Vaughan and Copeland who at the time were also among the highest paid employees of the Southwest Region.  This transaction was never disclosed to Visual Edge.  In fact, this conduct

7

74346696.1

directly contradicted a conflict of interest representation made by Guarino, wherein he failed to disclose that he had any relationship with Innovative Orange.

18. Prior to the sale of Zeno to Visual Edge, the Professional Services Business of Zeno had entered into contracts with a number of customers for the sale or lease of Laserfiche software. Laserfiche software is an enterprise content and document management system. Zeno's contracts with customers regularly consisted of three components: equipment lease or sale; after-sale service and support; and professional services for development and Laserfiche licensing. In most cases, all three components were bundled into a single contract. These contracts and leases were regularly sold by Zeno to finance companies that funded the equipment leasing or sale portion of the contract but did not fund the after-sale service and support or the professional services portion of the contract. As a result, Zeno was paid and received the sales revenue up front although there were continuing recurring costs and expenses related to the after-sale service and support required under the contract with the customers. These Laserfiche-related contracts were subsequently transferred to Innovative Orange upon the purchase of the Professional Services Business by Guarino, Vaughan and Copeland.

19. In approximately April 2020, it was discovered that Guarino was approving and submitting costs and expenses for the professional services portion of the Laserfiche contracts for Visual Edge to pay. When questioned about these costs and expenses, Guarino falsely advised Visual Edge that the costs and expenses being submitted for payment related to service and support for Laserfiche contracts that had been entered into after the Zeno asset purchase and for which Zeno would be paid sufficient revenue to cover the costs and expenses. This was false. In reality, the majority of the costs and expenses being passed on to Visual Edge to pay related to contracts that had been entered into by Zeno before the asset purchase, and where Zeno had been paid all of

74346696.1

the revenue up front but had not accrued for the subsequent recurring costs and expenses associated with the after-sale service and support required by the contracts with the customers.

20. The responsibility to pay the recurring costs and expenses for Laserfiche-related customer contracts that had been entered into prior to the Asset Purchase Agreement was exclusively upon either Zeno's prior owner or Innovative Orange. Despite knowing this, Guarino fraudulently and under false pretenses approved and submitted invoices relating to such costs and expenses for Visual Edge to pay and that Visual Edge did pay in an amount exceeding $331,000.00 during the time he was employed in a fiduciary capacity. Visual Edge seeks the return of this amount from Guarino.

## IV.
### CAUSES OF ACTION

### Count I: Breach of Fiduciary Duties

21. All the facts and allegations in the preceding paragraphs are incorporated herein by reference as if fully set forth herein.

22. In the capacity of President and/or General Manager of the Zeno division, Guarino owed fiduciary duties to Visual Edge. The conduct described above constitutes a breach of his fiduciary duties, including his duty of loyalty, duty to refrain from self-dealing, duty to act with integrity, and duty of full disclosure. Among other things, Guarino breached his duties by falsely representing the true facts relating to his personal sales as well as the results of Zeno's reported monthly revenue and quarterly EBDA so as to artificially increase the Commissions and Bonuses to be paid to him under the terms of his Compensation Agreement.

23. Guarino also breached his fiduciary duties by falsifying Zeno's financial performance in an effort to maximize his anticipated earn out payment related to the purchase of Zeno's assets by Visual Edge.

24.     Guarino also breached his fiduciary duties by approving and submitting costs and expenses to be paid by Visual Edge relating to Laserfiche contracts when in fact such expenses should have been paid directly by either the prior owner of Zeno or Innovative Orange, a company Guarino surreptitiously had a personal interest in while still employed at Visual Edge.

25.     Guarino willfully, intentionally and with actual malice breached his fiduciary duties which proximately caused damages to Visual Edge.  Visual Edge seeks damages in excess of the jurisdictional limits of this Court.

### Count II:  Fraud, Constructive Fraud and Negligent Misrepresentation

26.     All the facts and allegations in the preceding paragraphs are incorporated herein by reference as if fully set forth herein.

27.     By making material false and misleading statements, and/or remaining silent when he had a duty to speak, Guarino, in the course of his employment and with the purpose that Visual Edge rely on the statements, intentionally or negligently misrepresented facts, failed to disclose facts and supplied false information to Visual Edge, upon which it justifiably relied to its detriment. These material misrepresentations were made with knowledge of their falsity when made or with negligent indifference as to their veracity when made and proximately caused damages to Visual Edge in an amount in excess of the jurisdictional limits of this Court.

28.     In addition, Guarino had fiduciary duties to disclose material facts and to not make material misrepresentations relating to Zeno's and Visual Edge's business.  Guarino has breached these duties, and as a result, has constructively defrauded Visual Edge and has proximately caused damages in an amount in excess of the jurisdictional limits of this Court.

### Count III:  Damages

29. For the reasons set forth above, Visual Edge seeks actual, special, consequential and exemplary damages, together with equitable remedies, resulting from Guarino's fraudulent conduct and breaches of his fiduciary duties.  Because Guarino has been unjustly enriched under the Compensation Agreement, Visual Edge seeks the return of the value of all Bonuses and Commissions paid to him by Visual Edge pursuant to the Compensation Agreement; repayment of the costs and expenses that were improperly paid by Visual Edge relating to Innovative Orange; damages associated with the Amendment to the Asset Purchase Agreement; together with payment by Guarino of any and all accounting costs and fees, legal costs and fees, and other professional costs (including all internal and external costs incurred in investigating Guarino's misconduct) and fees incurred now or in the future as a result of Guarino's fraud and breach of his fiduciary duties.

30. Guarino's multiple acts of fraud and breach of his fiduciary duties were done with malice and/or specific intent to cause substantial injury to Visual Edge.  Visual Edge therefore is entitled to an award of exemplary damages against Guarino in this action in an amount in excess of this Court's minimum jurisdictional limits.

## V.
### ATTORNEY FEES

31. As a result of Guarino's actions, the damages anticipated by Visual Edge and the necessity for instigating these counterclaims to recover same, Visual Edge seeks recovery of its attorneys' fees incurred in this action.

## VI.
### CONDITIONS PRECEDENT

32. All conditions precedent to the recovery of the relief requested by Visual Edge herein have occurred.

# VII.
## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counter-Plaintiff Visual Edge, Inc. prays:

(a) that Visual Edge have judgment against Counter-Defendant Guarino for actual damages, special damages, consequential damages, and exemplary damages, for its claims as described herein;

(b) that Visual Edge have judgment against Counter-Defendant Guarino for costs and its reasonable and necessary attorneys' fees;

(c) that Visual Edge have judgment against Counter-Defendant Guarino for pre-judgment and post-judgment interest as allowed by law; and

(d) that Visual Edge be awarded such other and further relief, at law or in equity, as may be just and proper.

Dated: March 1, 2021                                Respectfully submitted,

*/s/ Thomas E. Reddin*
Thomas E. Reddin
State Bar No. 16660950
tom.reddin@nortonrosefulbright.com
Joshua Owings
Texas State Bar No. 24117274
josh.owings@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone:   (214) 855-8000
Facsimile:   (214) 855-8200

**Counsel for Defendant**
**Visual Edge, Inc.**

## CERTIFICATE OF SERVICE

  I hereby certify that on March 1, 2021, a true and correct copy of the foregoing has been filed with the Court via the CM/ECF filing system and served via same on the following counsel of record:

Daniel H. Byrne
dbyrne@fbhg.law
Christine E. Burgess
cburgess@fbhg.law
**FRITZ, BYRNE, HEAD & GILSTRAP, PLLC**
221 West 6th Street, Suite 960
Austin, TX 78701
*Counsel for Plaintiff*

                */s/ Thomas E. Reddin*
                 Thomas E. Reddin

74346696.1